All right. For this panel, we're going to hear three oral arguments. The first oral argument for this panel is docket number 18-1349, IPCOM v. HTC Corporation. Mr. Reed, whenever you're ready. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. My name is David Reed. I'm here on behalf of IPCOM. The dispositive issue in this appeal is the correct construction of the arrangement for reactivating element of the claims, which is agreed it's a means plus function element. The examiner during the re-examination proceedings correctly identified the corresponding algorithm for that limitation. It's the three-step procedure in Figure 5 of the specification, which is described in Column 6 at Lines 30 to 40. The board on remand from this Court's last decision in this re-examination erred by identifying instead a corresponding algorithm as nothing more than a mobile station or cell phone sending a message, sending a simple message to the original base station to reactivate the link. And there are two reasons that I'd like to focus on for why the board's algorithm is incorrect. First, that simple message algorithm is not an alternative algorithm in the specification. Rather, it is describing Figures 4 to 6, which describe the reactivation in more detail, and it's that statement that the board is relying on is part of the algorithm that's shown in those figures. The second reason is that the board's simple message algorithm alone is insufficient structure to perform the recited function. So, addressing the first point... As I understand the claim from the first HTC case that dealt with the indefiniteness issue, do I understand correctly that the language and arrangement for reactivating the link with the first base station if the handover is unsuccessful, that's talking about a function that is performed by the mobile station, right? That is correct. In that first appeal, the 2012 decision, the court held that the claim is directed to a mobile station and that the mobile station comprises that arrangement that's set forth in that element. So, something that's performed, for example, by the base station wouldn't fall within the arrangement because the The algorithm involves the mobile station specifically both sending and receiving messages. So, the three steps are first the mobile station receiving a rejection message that's sent by the target base station, and then sending a message back to the original base station to maintain the link, and then the mobile station then receiving a message, acknowledgement message, from that original base station that re-establishes the link. So, the board relies on a statement in the top of column 5 at lines 10 to 12... It's a pretty clear sentence, isn't it? Quote, if the handover to new base station BS2 fails, the MS mobile station can reactivate the message, period. What's unclear about that sentence that says the mobile station can reactivate the link to the old base station by sending a simple message? Your Honor, context is the key here. That sentence immediately follows a sentence that reads, figures 4 to 6 relate to a method for handing over to an MS from an old base station to a new base station. And then that sentence says, if the handover, referring to that handover that was described in the previous sentence describing figures 4 to 6, if the handover fails, then the mobile station can reactivate the link. That sentence cannot logically be read as describing an alternative algorithm as HTC maintains. Rather, the only logical way to define those figures, figures 4 to 6, that it's referring to. And those figures, specifically figure 5, is the only example in the specification of an unsuccessful handover followed by reactivation of the original link. In reading that in context, the simple message that statement is referring to is referring to message 408 in that algorithm, which is a message, a simple message from the mobile station back to the original base station that it wants to maintain that link. But the algorithm doesn't stop there. It also involves an acknowledgment message back from the original base station. So that's the natural reading of the specification and how a person of ordinary skill in the art would read it. And there's expert testimony on this point explaining that understanding of a person of ordinary skill. And that expert testimony is one-sided here. That expert testimony was rather a conclusory. It didn't really provide any kind of reasoning or evidence. So that's one problem. The second problem is that this exercise of trying to identify what the corresponding structure is for a means plus function limitation, as I understand it, is a legal question. That's a question for the court. The exercise of trying to match up different pieces of the intrinsic evidence to a means plus function limitation, I believe that's a legal question and so therefore we're not going to be giving deference to any kind of expert. So that's problem number two. So in the end, I don't think you have very much juice out of your expert declaration. So in the end it comes down to more of an exercise of trying to understand what is it about this simple declarative statement in column 5 that is overrun by anything else that's going on in the rest of the specification. So to respond to that, after Dr. Mattacetti identified the algorithm, HTC submitted its own expert testimony and its own expert did not dispute that algorithm. So I would note that that was at Appendix 12777. I want to make sure I'm looking at the right expert testimony because I was kind of surprised that this was set up as being something that's expert testimony supporting the claim construction. It's at page 12556, right? Is that the page I should be looking at? So 12556 is the testimony from Dr. Mattacetti who's IPCOM's expert and then HTC's expert testimony responding to Dr. Mattacetti was at Appendix 12777. Right, but you're relying on what the proper corresponding structure is, but all I read here is he says I understand from counsel that the structure provided by the algorithm is the following. I don't even see him necessarily providing that testimony and I agree it seems conclusory. Is it just paragraph 18 and the sentence above it? Yes, Your Honor, that's the specific testimony and his understanding from counsel was the legal point that additional structure is provided by any algorithm disclosed in the patent to perform the recited function and then in paragraph 18 he provides his opinion having looked at the patent identifying what he believes to be the corresponding algorithm. He admittedly does not grapple with this question about column 5 because that argument had not been advanced to that point by HTC. However, when HTC did advance that argument it submitted expert testimony of its own and its expert didn't dispute that the three-step algorithm applies. Do you agree that this is a legal exercise that we're undertaking here? Yes, Your Honor, I agree this is a legal exercise although the Supreme Court's TEPA decision recognizes that it can include underlying factual questions about how a person of ordinary skill in the art would read the specification and in this court's Atmel Corp decision which is cited in our briefing, the board has found that the board has erred by ignoring unrebutted expert testimony on what a corresponding structure is in a specification. But I don't want to put too much emphasis, the the focus really should be on the intrinsic evidence as you noted and that's the first and foremost in the claim construction inquiry. And here I'd like to note my second point from my intro that the simple message alone in that sentence in the top of column 5 is insufficient structure. It alone in the context of this claim does it cannot fully perform the function and the reason for that is that the claim in the element immediately preceding the arrangement for reactivating it recites a timer element. So in this network environment there are two base stations, a first and a second base station. When the cell phone attempts a handover, a timer is set in that original base station and that timer, the link resources and the link data for the link is maintained but only until that timer expires. After that timer expires the link is cleared and the mobile station cannot go back and reactivate the link. So here where there's a mobile station that sends a message that it wants to return as described in figure in column 6, it doesn't know whether that message is received before or after expiration of that timer unless it was first receives that acknowledgement message and in column 6 the patent explains that it's the acknowledgement message that reestablishes the link. Can you tell me where you're pointing to in particular in column 6? Yes your honor I would direct you to column 6 at line 38 which reads, the sentence immediately before explains that the message from the mobile station is a message indicating that it wants to maintain the link and then at line 38 the specification states the link between BS1 and the MS can be reestablished by means of a simple acknowledged message 409. What do you make of the fact that the claim talks about reactivating and the language in the specification at column 5 lines 10 through 12 talks about reactivating and this language that you're pointing to here in column 6 is talking about reestablishing. In different claims some of them refer to reestablishing, some of them refer to reactivating. Is reactivation something just referring to what the mobile station is doing? There's no magic in the specification to the word reactivate versus reestablish. The specification uses a wide variety of terms to the word reactivate. That's in the context of the specific step of sending a simple message, right? It's the only place in the specification where the words used actually. It is, but it's also used in reference to figures four to six which that sentence is referring to. The specification also in column six uses the terms reestablish or the mobile station returning to the old base I'm asking if there's a difference between reactivating and reestablishing. I don't believe so your honor. I believe those those terms are used interchangeably along with several others in this in the specification. What are the other terms that you think are used? Reregister is used in column 7 to refer to the same concept or setting up the old link again sometimes is used. I would also note during prosecution there were as you noted there were claims that used reactivating, claims that used reestablishing, and during original prosecution the applicant treated those terms and those claims the same in distinguishing prior art which we explained in our reply at pages eight and nine. You're into your rebuttal. I'd like to say my rebuttal. Thank you. My name is Tyler Bowen and I'm here today on behalf of HTC Corporation. Your honors I'd like to start with the specification in column five if I can and discuss a little bit what is disclosed in the specification with regard to this feature of a mobile station being able to return to a first base station if a handover to a second base station is unsuccessful. My counsel for IPCOM has pointed to column five lines 10 through 12 and Judge Chen already read that into the record but something similar is also described again in column seven of the patent at lines 50 to 52 where it says if the search for a new base station is unsuccessful the mobile station re-registers at its old base station and keeps its previous settings. There too there is no discussion of it easily encompass embodiment in which you're sending a message to your old base station. The old base station sends you a acknowledgement message thereby clearing the way for you to now re-communicate and send data to the old base station. So re-register it's not so clear to me is answers the question in the same way that the sentence in column five does. So I've looked at the specification your honor for that point and when it talks about registering in terms of what the base excuse me what the mobile station does there's no indication that there needs to be or is a response from the base station back to the mobile station. As used in the specification that term seems to refer to the mobile station sending a message to the base station to establish a connection. I do agree that there could be an acknowledgement message back but it's the word and re-register is used in the specification. I think the more reasonable reading is that the mobile station just sends a message. What in the specification is so decisive about that? So if we look for example in column one your honor and I will point you to line 42 where we're talking about non-network supported handover. When registering at the new base station the mobile station itself is responsible for ensuring that all link parameter settings and link settings are modified. There's also a reference to registering in that same column if I can find it. Oh yes I'm 39 the mobile station registers handover at the old base station which then performs the search for suitable new base station. I don't think that those passages necessarily are dispositive your honor but what I do think is that they show that registering is referring to a base station action and not necessarily something that is confirmed by the mobile station. But this oh I'm sorry. I was just going to ask you do you think we're here on appeal from the PTAB and the broadest reasonable interpretation standard applies. Do you think that that matters in a case where you're looking for corresponding structure in this specification? Is there a broadest reasonable construction of the corresponding structure? How do we take that standard into account? Your honor I do believe that that is relevant because this specification is not a paragon of clarity necessarily but if we look at some of the plain statements including what is in column five at up on Judge Stoll's question. Yes your honor. Are you aware of an opinion from this court that says when it comes to identifying what is the corresponding structure for a given means plus function limitation you should read the specification with the broadest reasonable interpretation in mind. I'm not aware of any specific opinion that I could cite to the court. I think that our briefing does refer to a few instances where if there is alternative corresponding structure that's disclosed in the specification any of that structure counts. That's not this situation. The situation we have in front of us is the potential of ambiguity here and trying to figure out should what is stated in column five be reconciled with column six to be all referring to the same thing or should we understand what's being discussed in column five as being yet a disclosed in column six. And so with that ambiguity potentially one could use the broadest reasonable interpretation say well it's less than clear but I suppose it's reasonable to say that there are two embodiments because that would be the broader way of understanding what is the corresponding structures for this means plus function limitation. But I don't know if this court has ever used BRI in that particular manner. And as far as I'm hearing from you I don't think you know either. That's correct your honor. I don't have a case that I could cite to you today. So your cases in your rhetoric don't speak to this. That's correct your honor. What I will say is in terms of the intrinsic record if we look at column five and column six together I agree with my colleague that context is important. What is the mobile station can return by sending a simple or excuse me can reactivate the link by sending a simple message that is inconsistent with each of figures four five and six. Figure four describes a successful handover not one in which a link is reactivated. Figure five is about reestablishing a link when the base station gives permission an acknowledgement message after the mobile station has requested it. You agree though that the mobile station then does send an acknowledgement message in figure five right. It's message 409. The base station your honor. The first base station. It says they're trying to make the verbs so it's all the actions by the mobile station. So the mobile station receiving the acknowledgement message is the thing that creates the final reactivation. Right. Well that's another reason why I think the two algorithms are different. In column six we're talking about a mobile station that says to the first base station I'd like to come back. The language in the specification itself says let me point you to the line. In column six here starting at line 37 there's a message that gets sent to the first base station indicating that the mobile station wants to maintain the link a desire to maintain the link. And then it's up to the base station. Will it acknowledge that and allow the reestablishment. To me that the meaning of that and the description in the specification is different than in column five where it's the mobile station who sends one simple message to reactivate the link. I understand what the appellants council was saying this morning is that the embodiments described in the specification talk about the use and need for a timer. And so the acknowledgement message is critical for the mobile station's ability to start transmitting data back to the old base station because the mobile station doesn't know if the timers run out and if the timers run out then it can't send any more data. Only when it gets the okay message from the old base station does it know okay I've I've successfully reestablished a link within the time that I've been given. And so therefore the acknowledgement message from the old base station is in fact a part of the establishment of the link to be able to send more data from the old base station. And so therefore the acknowledgement message isn't necessary. All of the prior art including the four references that HTC has relied on when there's an unsuccessful handover and the mobile station contacts the first base station the two just begin sending data back and forth. There's not a formal acknowledgement message. So that's not something that's required and the mobile station will know that the reestablishment or the reactivation has occurred because the data communication continues between the two constituents. As I understand the patent owner's argument about its specification, it's arguing that its specification requires the acknowledge message before the mobile station can start sending data to the old base station. So to in response to that I would point back to the portions of the specification that don't say anything about an acknowledgement message. Again, we have column 5 at lines 10 through 12, column 7 at lines 50 through 52, and one word with respect to the difference between reactivation and reestablishment, when the mobile station reactivates the link, it's merely taking a channel that was dormant, that was not in use, and it sends a message across that channel. When that message gets sent, it is active because there's data that's been sent across it. It doesn't matter if the base station has acknowledged that necessarily because the link is already reactivated. It could be rejected later, but that's what's suggested by the word reactivated as opposed to the word reestablished, which requires the base station to give permission. So your honors, let me just point to a couple of other points. Dr. Kotzen, the mention was made of HTC's expert Dr. Kotzen, and I just want to be crystal clear that Dr. Kotzen did not accept or endorse the construction that IPCOM had identified. He disagreed with it. What he did do was to evaluate the prior art in light of that three-step construction for the corresponding structure and also in light of IPCOM's infringement contentions in some corresponding district court litigation. Do you have a record site for where he disagreed? Oh, yes, your honor, I do. So if we go to Appendix at page 12,778. And also on the previous pages where Dr. Kotzen describes how he's approaching the corresponding structure in terms of The third step that I get to is there was mention in the briefs that HTC had not identified and the prior art did not disclose any specific acknowledgment message that went back from the base station to the mobile station. If you look at the corresponding structure that IPCOM has proposed, the third step requires, and I'm reading this from the gray brief on page 5, receiving a message from the first base station. What HTC has pointed to in the record is that in the prior art, there is no specific acknowledgment message, but there is a resumption of communication. In other words, the base station sends data packets, sends messages over to the mobile station when the communications resume. Under IPCOM's own infringement contentions in the district court litigation, that is reactivation. That's the same thing that IPCOM pointed to as an acknowledgment message. And besides that, I'll just give one example to the court of the PACS reference, and I'll point the court to Appendix 13,976. The PACS reference talks about a subscriber unit, a mobile station that goes from one radio port to a second radio port. It's transferred. That's the handover. If that transfer is unsuccessful or denied, as described at the very bottom of Appendix 13,976, it says the subscriber unit will resume the conversation on the old link and return to the ALT permitted state. Turn back a couple of pages to Appendix 13,974, and this flow diagram shows a subscriber unit in the ALT permitted state. There's a description at the top of the page that the subscriber unit is tuned to the old base station. It has already gone back after an unsuccessful handover attempt. And there are two messages that are identified in this flow diagram that the first base station sends to the subscriber unit, specific messages after it has returned. There's the ALT underscore EXEC message and the PERFORM underscore TST message. So there are specific messages in the prior art that are sent from the first base station back to the mobile station if a handover is unsuccessful, and that is what we would point out to the board if the court were to agree with IPCONF's construction and remand. Unless the court has any further questions, I'm happy to stand on HTC's briefs. Okay, thank you. Mr. Reed, you still have a little bit of time left. Thank you, Your Honors. The specification here has only one reactivation algorithm. It's shown in Figure 5. It's the three steps described in the specification. So under the broadest reasonable interpretation, the only reasonable construction here is to identify that algorithm. It's clearly set forth as the corresponding one. Can I ask you, on Claim 18, is there a claim differentiation argument here on the arrangement for sending a handover query? That language that was added to amended Claim 18 seems to talk about sending a message from the base station to the mobile station. Does that make it so that your argument with respect to what the arrangement includes goes too far because under claim differentiation? Are you referring to the arrangement? I'm referring to the arrangement language that was added during the amendment. The language that was added to the claim just above the arrangement language during the amendment process. That additional language is relating to a forced handover. So there's an arrangement for sending a forced handover message to the mobile station, forcing that mobile station to search for a new base station and a handover query. I don't believe that that affects the interpretation of the reactivating. So that doesn't apply to the situation where the second base station says, no, I'm not going to be able to connect to you so you don't have to go back to the first base station? I see that I'm over my time. May I respond? Just answer my question. Sure. Yes. So I believe this is a narrower claim that is addressed specifically to that forced handover situation, whereas Claim 1 may be broader than that. It may apply to additional situations, but I don't believe that the difference between those claims affects the interpretation of the arrangement for reactivating. Thank you, Your Honors. Thank you. Case is submitted.